IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-590-FL

IRENE PAGE,                              )
                Plaintiff/Claimant,      )
                                         )
                                         )
                                         )     **MEMORANDUM AND**
            v.                           )     **RECOMMENDATION**
                                         )
MICHAEL J. ASTRUE, Commissioner of       )
Social Security,                         )
                                         )
            Defendant.                   )

This matter is before the court on the parties' cross motions for judgment on the pleadings
[DE-19, DE-24] pursuant to Fed. R. Civ. P. 12(c). Irene Page ("Claimant") filed this action pursuant
to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a
period of disability and Disability Insurance Benefits ("DIB") payments. Claimant responded [DE-
26] to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending
motions are ripe for adjudication. Having carefully reviewed the administrative record and the
motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion
for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings, and
upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on August 8,
2008, alleging disability beginning July 15, 2008. (R. 9). Her claim was denied initially and upon
reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on May 14,
2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and

testified. *Id.* On June 24, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 16).

Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 1), and submitted additional evidence as part of her request (R. 5). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on August 24, 2011. (R. 1). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARDS OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his or her written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to classify Claimant's gastrointestinal condition as a severe impairment; (2) improper evaluation of the treating

3

physicians' opinions; and (3) improper assessment of Claimant's credibility.[1] Pl.'s Mem. Supp. Pl.'s Mot. Pleadings at 1. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 11). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, anxiety, and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in activities of daily living and moderate limitations in her activities of social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 14). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[2] except she is limited to occasional climbing

---

[1]    The court identifies and discusses the alleged assignments of error pursuant to the sequential evaluation process and not as presented by Claimant.

[2]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

and balancing and must avoid concentrated exposure to unprotected heights and hazardous machinery. (R. 14). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a cleaner. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 12-13). The ALJ further concluded that, in the alternative, considering Claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Claimant can also perform, such as apparel stock checker, routing clerk, and mail clerk. (R. 15-16).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 54 years old and unemployed. (R. 29, 30). Claimant attained a ninth grade education. (R. 29). Claimant was last employed with Care One nursing service for approximately three years, where she was a personal care assistant and home health aide. (R. 32, 130). Claimant's past work experience also includes work as a waitress, short order cook, cleaner/housekeeper, seamstress, and dishwasher/kitchen helper. (R. 30, 31, 130).

Claimant testified that she is unable to work due to depression, panic attacks, vertigo, irritable bowel syndrome, seizures, headaches, and pain in her low back, leg, and right shoulder. (R. 32-33, 34-35). Claimant testified that her depression and panic attacks persist despite psychiatric treatment. (R. 30, 42). Claimant stated that she avoids crowded public places. (R. 42). Claimant experiences panic attacks approximately four times a month, which are responsive to medication. (R. 42-45).

Claimant further testified that she experiences vertigo approximately six times a year. (R. 34). She further stated that her seizures are controlled with medication. (R. 34). Claimant testified that she is unable to lift heavy objects due to back and shoulder pain. (R. 34-35). Some days

5

Claimant has to "drag" herself out of bed, and often has to stay in bed for a couple of days due to leg pain. (R. 41). Claimant added that her walking capacity is significantly restricted due to low back and leg pain. (R. 37). Claimant also testified that she drops objects from her right dominant hand. (R. 38). Claimant further stated that she has difficulty controlling her bowels and requires immediate restroom access. (R. 39). She reported an episode of soiling her clothes in Wal-Mart when she could not get to the restroom in time. (R. 39). Claimant later testified that the medication she takes for constipation causes uncontrollable diarrhea. (R. 39-40).

## III.    Vocational Expert's Testimony at the Administrative Hearing

Stephen Carpenter testified as a VE at the administrative hearing. (R. 47). After the VE testified regarding Claimant's past work experience (R. 48-49), the ALJ asked the VE to assume a hypothetical individual who is closely approaching advanced age, who has limited education and who has the Claimant's past relevant work experience, and posed three hypothetical questions. (R. 49). First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work involving simple, routine, and repetitive tasks, no quota-based work, occasional interaction with co-workers and supervisors, no sustained contact with the general public, and no more than occasional climbing and balancing, and no concentrated exposure to hazards. *Id.*

The VE responded in the negative as to the waitressing and home attendant positions, as they would require frequent interactions with the general public. (R. 49-50). He responded affirmatively as to the cleaner and the kitchen helper. (R. 50). He further explained the individual could perform the following medium positions with a specific vocational preparation ("SVP") time of 2 and provided DOT classification citations, along with the number of jobs available in the local and

6

national economies: (1) linen room attendant (DOT# 222.387-030, 5,000-10,000 locally, 500,000 nationally); (2) coffee maker (DOT# 317.684-010, 2,000 locally, 500,000 nationally); (3) dining room attendant (DOT# 311.677-018, 2,000 locally, 500,000 nationally). (R. 50-51).

For the second hypothetical, the ALJ asked whether an individual limited to light work with the remaining limitations described above could perform Claimant's past relevant work. (R. 51). The VE initially testified in the negative, but subsequently clarified that the individual could perform work as a cleaner. (R. 52). The VE testified further that the hypothetical individual could perform the following light work (1) stock checker (DOT #299.667-014, 2,000 locally, 200,000 nationally); (2) routing clerk (DOT# 222.687, 2,000 locally, 200,000 nationally); and (3) mail clerk (DOT# 209.687-0260, 2,000 locally, 200,000 nationally). *Id.*

Finally, the ALJ asked whether the positions identified in hypothetical two would remain available if the individual needed to lie down and nap for at least an hour a day at the job site or leave the work site up to four times a month because of panic attacks. (R. 53). The VE responded in the negative. *Id.*

Upon questioning by Claimant's counsel, the VE testified that he relied on the job descriptions set forth in the DOT and not as performed by Claimant. (R. 54).

## DISCUSSION

I.      **The additional evidence submitted to the Appeals Council is not material.**

The Appeals Council incorporated the following additional evidence into the record: (1) medical records from ResCare Home Care, Inc.[3] dated July 24, 2008 through September 21, 2010;

---

[3]      It appears that ResCare Home Care, Inc. was initially Health Services Personnel, Inc. and CNC Access; therefore, records from 2008, 2009, and the parts of 2010 bear those names.

(R. 383-452); and (2) medical source opinions from R. Sriraman, M.D. dated August 19, 2010 and Thomas Pedigo, MSW, LCSW, of ResCare HomeCare, Inc., dated July 27, 2010 (R. 453-54). Although the Appeals Council discounted the additional evidence (R. 7), the court must review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, Claimant bears the burden of demonstrating that the additional evidence is (1) new, i.e., not duplicative or cumulative of that which is already in the record, (2) material, i.e., would have changed the outcome of the ALJ's decision; and (3) relates to the claimant's medical condition as it existed at the time of the hearing. 20 C.F.R. § 404.970(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v. Astrue*, No. 2:07-CV-00030-FL, 2008 U.S. Dist. LEXIS 66820, at *8, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). In this case, the relevant time period extends from July 15, 2008 (Claimant's alleged disability onset date) to June 24, 2010 (the date of the ALJ's decision).

The fact that the additional evidence may have been generated after the ALJ's decision will not automatically disqualify it from consideration. The claimant must do more than simply submit medical records which postdate the hearing since the subsequently-generated records, standing alone, are insufficient to satisfy the materiality requirement. *See* 20 C.F.R. § 404.970(b). In particular, the claimant must show how the new evidence relates to the claimant's medical condition as it was at the time of the hearing. *Id*; *see also Williams*, 905 F.2d at 216 (explaining medical evidence obtained

8

after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision). However, if the new evidence shows merely that the claimant's condition deteriorated after the administrative hearing, the evidence is not relevant to the claimant's condition as it was during the time at issue. *See Rhodes v. Barnhart*, No. 1:04CV22, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*, 176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

a.      *Medical Records from ResCare Home Care, Inc. dated July 24, 2008 - September 21, 2010*

The 2008 and 2009 records, as well as the 2010 records dated January 5, 2010 and March 2, 2010, are duplicative, as this evidence appeared in the record submitted to the ALJ. (R. 276-87, 290-300, 346-67, 384-95, 398-400, 403, 405, 407-28, 432-35, 445-47).

While the treatment notes dated May 4, 2010 and June 24, 2010 from Dr. Sriraman, Claimant's psychiatrist, are not cumulative of those considered by the ALJ, they are immaterial as they would not change the outcome of the case. (R. 401-02, 430-31, 438-44, 449-52). Dr. Srirman's treatment notes from May 4, 2010 indicate Claimant requested that her dosage of Risperdal be increased because Claimant's anxiety and depression were increasing. (R. 430-31). However, Dr. Sriraman's treatment notes from his next meeting with Claimant indicate that Claimant was "doing well on current medication regime." (R. 438).

In discounting Dr. Sriraman's treating source opinion, the ALJ found that Claimant's "medication dosage has been decreased with good success." (R. 14). However, the ALJ noted more than once in her decision that Claimant's symptoms responded to medication, and cited Dr. Sriraman's

9

treatment notes indicating that Claimant had a good response to medication with no side effects. (R. 13). Although the new evidence confirms that Claimant's medication dosage of Risperdal had to subsequently be increased, the ALJ did not deny that Claimant suffered from recurrent depression and anxiety. She simply concluded that Claimant's conditions were responsive to medication. The new evidence does not effectively refute this. *See Raglin*, 39 Fed. Appx. at 780-81. In every other way, the treatment notes from May 4 and June 24 of Dr. Sriraman and Thomas Pedigo, Claimant's psychotherapist, continue to indicate that Claimant was friendly and cooperative, (R. 430, 438), that Claimant's mood was euthymic, (R. 430, 438), and that Claimant continued to have no medication side effects (R. 430, 438), all of which was noted in the ALJ's decision as well. (R. 13). The court finds the additional medical records evidence from May 4, 2010 and June 24, 2010 immaterial, as they would not have changed the outcome of the ALJ's decision.

Moreover, Claimant included additional treatment notes from Dr. Sriraman and Mr. Pedigo dated August 19, 2010, September 3, 2010, and September 21, 2010, after the date of the ALJ's decision. (R. 396-397, 436-437). Dr. Sriraman's treatment notes from August 19, 2010 indicate that Claimant's dosage of Celexa was increased due to increased depressive symptoms. (R. 437). However, this treatment note does not relate to the relevant time period, as it appears to be based on Claimant's subjective complaints made two months after the ALJ's decision. The notes state that Claimant said that "a few days back, she was having crying spells and her depressive symptoms were more, in that she felt depressed, down in the dumps, tired and anergic." *Id.* (Emphasis added). Moreover, the notes state that Claimant "has started to hear voices." *Id.* (Emphasis added). Additionally, the notes state that there appeared to be "no psychosocial stressors at that time." *Id.* (Emphasis added). Moreover, Pedigo's treatment notes from September 3, 2010, indicate that

10

Claimant "has had increased anxiety and has had some sleepless nights recently." (R. 397).

Likewise, Pedigo's September 19, 2010 notes indicate that Claimant "has had some problems with panic attacks and vertigo recently." ( R. 436). While the additional evidence proffered by Claimant may indicate a degeneration of Claimant's condition, such evidence is not relevant to the present claim for benefits. *See Rhodes*, 2005 U.S. Dist. LEXIS 42876, at \*33; *see Eason,* 2008 U.S. Dist LEXIS 66820 at \*10, 2008 WL 4108084 at \*4 (Claimant failed to carry burden where it was unclear whether the additional evidence pertained to claimant's symptoms during the relevant time period). Where records indicate a deterioration in a claimant's condition occurring subsequent to the ALJ's decision, such evidence "simply has no bearing on whether [a claimant] was disabled during the relevant period of time." *Jones v. Astrue*, No. 4:11-CV-146-FL, 2012 U.S. Dist. LEXIS 125120, at \*7, 2012 WL 3822204, at \*2 (E.D.N.C. June 5, 2012), adopted 2012 WL 3834924, 2012 U.S. Dist. LEXIS 126122 (E.D.N.C. Sept. 4, 2012) (quoting *Rhodes*, 2005 U.S. Dist. LEXIS 42876, at \*31). Accordingly, the additional evidence cannot change the outcome in this case, and thus is not material.

b.      *Medical Source Opinions from Dr. R. Sriraman and Thomas Pedigo, MSW, LCSW*

The Court finds the additional medical source opinion evidence from Dr. Sriraman dated August 19, 2010 is not material. (R. 453). Dr. Sriraman's opinion provides that:

> Although [Claimant] has had relief from symptoms in the short term, her progress is by no means steady, and she continues to have regular panic attacks compounded by poor health. It is my recommendation that she not pursue work at this time.
>
> ... [A]lthough there is not always major disruption of [Claimant's] daily routine because of symptoms, this does not necessarily mean that she would do well in a job setting, where there is pressure to perform.

*Id.* (Emphasis added). This opinion is dated two months after the date of the ALJ's opinion, and does not indicate anything about Claimant's condition as it existed during the relevant time period. Rather,

11

it indicates that Claimant should not pursue work "at this time," which was two months after the ALJ's decision. This court is unable to discern whether Dr. Sriraman relied on evidence in existence during the relevant time period reflecting Claimant's condition at that time. The opinion simply has no bearing on whether Claimant was disabled during the relevant period of time. *See Rhodes*, 2005 U.S. Dist. LEXIS 42876 at \*33; *see Eason*, 2008 U.S. Dist. LEXIS 66820 at \*10, 2008 WL 4108084 at \*4.

Moreover, the medical opinion of Claimant's psychotherapist, Thomas Pedigo, is not material.

Pedigo stated the following in his July 27, 2010 medical source letter:

> It is the opinion of this therapist that [Claimant] will likely not be able to hold full time gainful employment for a significant length of time. Although she has shown marked improvement in the management of her symptoms, that improvement has not been consistent for the duration of her treatment.

> ... [Claimant] continues to experience panic attacks on a regular basis, and her symptoms of depression affect her comfort level with tasks she must perform under pressure, prevent her from being able to interact with unfamiliar persons, and keep her from concentrating on household tasks without assistance. Finally, limited social network, additional family member in her household with mental illness, and anxiety exacerbated by physical problems prevent her from working.

(R. 454). The findings in this opinion regarding Claimant's inability to perform under pressure and discomfort with interacting with unfamiliar persons do not contradict the ALJ's determination that Claimant must avoid quota-based work, be limited to occasional contact with supervisors and co-workers, and avoid sustained contact with the general public. (R. 11, 453-54). Because this evidence corresponds with the findings made by the ALJ in her decision, this later-submitted evidence would not have changed the outcome of Claimant's determination by the ALJ, and, therefore, the evidence is immaterial.

**II. The ALJ properly found that Claimant's gastrointestinal condition was not a severe impairment.**

Claimant contends the ALJ committed an error in the second step of the sequential evaluation process by erroneously characterizing Claimant's gastrointestinal issue as a non-severe impairment. Pl.'s Mem. at 12.

The ALJ did not expressly find that Claimant's gastrointestinal condition was not severe, but rather only listed Claimant's degenerative disc disease, anxiety, and depression as severe impairments. (R. 11). The issue, however, is not whether the ALJ, upon making a severity finding as to certain impairments, failed to make an express determination as to other impairments or improperly characterized the severity of other impairments. Rather, the court's concern is whether the allegedly ignored or mischaracterized impairments at step two of the sequential evaluation process are considered in subsequent steps. *See Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 U.S. Dist. LEXIS 45685, at *5-6, 2009 WL 1649774, at *2 (E.D.N.C. June 1, 2009) (finding no reversible error "where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps"); *see McMichael v. Astrue*, No. 7:09-CV-84-WW, 2010 U.S. Dist. LEXIS 66747 at *23-24, 2010 WL 2691579 at *8 (E.D.N.C. July 6, 2010); *see Winston v. Astrue*, No. 4:11-CV-107-D, 2012 U.S. Dist LEXIS 132288, at*11, 2012 WL 4086448, at *4 (E.D.N.C. Sept. 17, 2012).

Here, the ALJ specifically found Claimant satisfied the severity requirement at step two of the process by finding that he had three "severe" impairments – degenerative disc disease, anxiety, and depression. (R. 11). The ALJ then discussed and evaluated evidence concerning Claimant's gastrointestinal condition later in her decision, noting that Claimant had alleged at the hearing that:

13

(1) she had difficulty controlling her bowels and required immediate restroom access; (2) she reported an episode of soiling her clothes in Wal-Mart because she could not get to the restroom in time; and (3) the medication she took for constipation caused uncontrollable diarrhea. (R. 12). The ALJ discussed the treatment notes documenting chronic dyspepsia and constipation secondary to irritable bowel syndrome, noted that Claimant's symptoms were responsive to treatment with Pepcid and Xanax, and that upon examination Claimant had only mild to moderate epigastric tenderness. (R. 13). *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

This analysis is supported by the record. A review of the treatment reports from gastroenterologist Duane Fitch, M.D., indicate mild symptoms with no indication that Claimant's episodes of diarrhea would prevent work. (R. 370-382). Out of the seven times that Claimant saw to Dr. Fitch from 2007 to 2010, his treatment notes indicate only two discussions of diarrhea. (R. 373, 377). The first was on January 21, 2008, in which Claimant reported that her constipation medicine Amitzia produced diarrhea. (R. 373). The second was on June 15, 2009, in which Claimant reported that she had recently had recurrent episodes of diarrhea. (R. 377). Claimant's next visit on January 8, 2010 made no mention of diarrhea, only that she continued to take 8 mcg of Amitzia one or two times per day as needed for constipation. (R. 378). While Claimant may have had episodes of diarrhea as a side effect of medication, this does not indicate an impairment that "significantly limit[s] [Claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Substantial evidence supports the ALJ's finding that Claimant's gastrointestinal condition is not a severe impairment.

14

## III. The ALJ properly evaluated the medical opinions.

Claimant contends the ALJ erred when she gave weight to Claimant's orthopaedist's opinion that Claimant's degenerative disc disease did not prevent her from working altogether, but did not give weight to her orthopaedist's opinion "restricting" Claimant to sedentary work. Pl's Mem. at 13. Claimant further argues that the ALJ improperly evaluated the opinion of Dr. Sriraman in finding that his opinion should be given little weight. This court disagrees as to both arguments.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, No. 2:05cv00046, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). The regulations prescribe factors to be considered

15

in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinion, and its consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). The ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

a.    *Dr. Appert's Opinion*

Claimant's orthopaedist, Robert A. Appert, M.D., indicated in a letter dated April 13, 2009 that Claimant, "has degenerative disk disease of her lumbar spine primarily at the L4 and L5 levels, however, this is really not an impairment to her employment. She is certainly capable of sedentary employment." (R. 343). While acknowledging that Dr. Appert did not explain exactly how he defined "sedentary employment," the ALJ found that Dr. Appert's opinion was well supported by the clinical and physical findings and was afforded great weight. (R. 13).

Claimant argues that "[t]he ALJ is not allowed to parse medical opinions like this and divorce statements from their qualifiers." Pl's Mem. at 13-14. Claimant further argues that, unlike phrases such as "light" and "medium," which are terms of art, the term "sedentary work" is "universally known" to include jobs which require little standing or walking, and are typically performed by sitting for a majority of the day. Pl's Mem. at 14. Therefore, Claimant argues, if Claimant were found to be capable only of sedentary work, she would have to be found disabled pursuant to the Medical Vocational Guidelines. *Id.*

The ALJ's finding is supported by substantial evidence. Importantly, Dr. Appert stated that

16

Claimant's condition "was not an impairment to her employment." (R. 343). Further, Dr. Appert did not state that Claimant is limited to only sedentary work, but rather that she is "capable of sedentary employment." *Id.* However, the ALJ is required to determine the most a Claimant can do given his or her impairments. S.S.R. 96-8p. ("RFC represents the most that an individual can do despite his or her limitations or restrictions."); *see Forehand v. Astrue*, 2012 U.S. Dist. LEXIS 127701, at *7, 2012 WL 3912763 at *2 (E.D.Va. July 5, 2012) (the ALJ determines the most the claimant can do in a work setting despite the physical and mental limitations of his impairments and any related symptoms). Moreover, the ALJ justified her decision to afford great weight to Dr. Appert's opinion, as she noted it was well-supported by the clinical and physical findings, including the fact that Claimant provided no evidence of disc herniation, spinal canal stenosis, or nerve root involvement. (R. 14). Accordingly, the ALJ was within her discretion in affording great weight to Dr. Appert's opinion.

b. *Dr. Sriraman's Opinion*

The ALJ accorded Dr. Sriraman's opinion minimal weight, finding that his opinion was not supported by his own treatment notes or by the psychotherapist's notes. (R. 13). Substantial evidence supports the ALJ's decision to discount Dr. Sriraman's opinion. In particular, the ALJ justified her decision to accord decreased evidentiary weight to Dr. Sriraman's opinion based on the following: (1) Dr. Sriraman's treatment notes indicating Claimant had a good response to the medication with no side effects; (2) Claimant was not being seen aggressively by her therapist, and only saw Dr. Sriraman every two months; and (3) Claimant's medication dosage had been decreased with good success. *Id.* at 14; *see Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

17

The inconsistency between the opinion and other medical evidence in the record concerning Claimant's response to medication for her anxiety and depression reasonably downgraded the true evidentiary value of Dr. Sriraman's opinion. For example, although Dr. Sriraman's medical opinion stated that Claimant's response to medication was "guarded" (R. 341), his treatment notes indicated that she was doing well on her current medication regime, and that she was pleasant, cooperative, and friendly. (R. 414, 418, 420, 421, 427, 428, 432). As already discussed, although the additional evidence did show that Dr. Sriraman had to increase Claimant's dosage of Risperdal on May 4, 2010 (R. 430), Dr. Sriraman's treatment notes on June 24, 2010 from Claimant's next visit indicate that she was "doing well on [her] current medication regimen." (R. 438). Additionally, the ALJ complied with S.S.R. 96-2p by making her decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Sriraman's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (Jan. 11, 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within her discretion in not giving controlling weight to Dr. Sriraman's opinion.

**IV.    Other medical evidence.**

Claimant argues further that the ALJ did not consider "the opinion of the health department examiners" when evaluating Claimant's condition "despite their multiple notations of serious psychological problems with major depressive disorder with psychosis and panic attacks with agoraphobia with GAF scores of 50 or below." Pl's Mem. at 15. Claimant does not identify the

18

"health department examiners" to which she refers, leaving the court to assume that she is referring to the treatment notes of Claimant's psychotherapist, Thomas Pedigo.

Contrary to Claimant's assertion, however, the ALJ discussed Claimant's psychotherapist's notes. (R. 13). The ALJ stated that "[r]ecent psychotherapy notes document improvement in the [C]laimant's mental condition. Her psychotherapist states that the [C]laimant is in 'good spirits.'" *Id.* Moreover, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

As already noted, the ALJ did not deny that Claimant suffered from depression, anxiety, and agoraphobia, but rather that these conditions were controlled through the use of medication and continued psychotherapy. (R. 13). Moreover, in discussing the "special technique" applied in assessing mental impairments, the ALJ found that Claimant experiences moderate restriction in maintaining social functioning and maintaining concentration, persistence, or pace due to her mental impairments. (R. 14). The ALJ further noted that Claimant had documented signs of social

19

withdrawal associated with anxiety and depression, but was able to interact appropriately during medical examinations. *Id.* Moreover, in discussing Claimant's RFC, the ALJ found that Claimant should be limited to occasional contact with supervisors and coworkers and avoid sustained contact with the general public. *Id.* The ALJ has provided sufficient reasoning for determining that the proper legal analysis has been conducted.

## IV. The ALJ properly evaluated Claimant's credibility.

Claimant contends that the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 10-13. This court disagrees.

This court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about her pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

20

a.   *Performance of Daily Activities*

The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms, but concluded Claimant's subjective complaints were not fully credible to the extent that they are inconsistent with the RFC assessment. (R. 12). In reaching this conclusion, the ALJ noted that Claimant's testimony was not supported by her written statements of record describing her daily activities. (R. 12-13).

Claimant argues that the ALJ allegedly failed to explain how the performance of daily activities was inconsistent with limitations reported by Claimant. Evidence of daily activities is highly probative to the credibility analysis. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Craig*, 76 F.3d at 594 (noting the factors to be considered in the credibility process include evaluation of claimant's activities). Here, the ALJ cited Claimant's testimony that she could load the dishwasher, perform laundry tasks, prepare simple foods, read the Bible, watch television, visit with family by telephone and in her home, and attend church. (R. 12-13). The ALJ did not deny Claimant's claim based on the evidence of those activities alone. Rather, the ALJ accounted for Claimant's ability to visit with friends and family by telephone and in her home and attend church as one piece of evidence in weighing her credibility with respect to her claimed inability to work and with respect to her residual functional capacity to perform work. (R. 11). *See Ausburne v. Barnhart*, No. 4:04-CV-78, 2005 U.S. Dist. LEXIS 15873, at *7-8, 2005 WL 1862642, at *3 (W.D. Va. Aug. 1, 2005) (noting "the Commissioner certainly has regulatory authority to consider a claimant's daily activities in evaluating a claimant's subjective symptoms," though the activities must be "vocationally relevant").

When viewed in combination with the entirety of the ALJ's credibility analysis, it is evident

21

the ALJ found Claimant's daily activities tended to show that her statements concerning the intensity, persistence, and limiting effects of the symptoms were inconsistent with the court's RFC assessment. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (holding that a claimant's daily activities can suggest claimant is not disabled); *Johnson*, 434 F.3d at 658 (a claimant's daily activities, such as performing exercise, cooking, and doing laundry were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical work activities).

b.     *Medical Evidence Relating to Back and Leg Pain*

Claimant next argues that the ALJ did not properly evaluate the medical evidence related to Claimant's alleged back and leg pain, taking issue with the ALJ's reliance on the fact that there was no indicated nerve root involvement. The record, however, supports the ALJ's determination.

The ALJ acknowledged Claimant's treatment for back pain at Wilson Orthopaedic Surgery and Neurology Center, P.A. (R. 172, 178, 343), summarized an x-ray scan indicating lumbar degenerative disc disease at L4-5 (R. 172, 178) and noted that there was no evidence of disc herniation, spinal canal stenosis, or nerve root involvement, which is a fair conclusion given that Dr. Appert, who took the x-ray, did not order further testing. The ALJ noted that the x-ray evidence showed only degenerative disc disease (R. 13), which was supported by the record. (R. 172). The ALJ also noted that physical examination revealed tenderness to palpation of the lumbar spine and positive bilateral straight leg test. (R. 13, 178). As already discussed, treating orthopedist Dr. Appert stated that, although Claimant has some clear involvement of the lumbar spine, Claimant's degenerative disc disease "is really not an impairment to her employment. She is certainly capable of sedentary employment." (R. 343). In light of this medical evidence, the ALJ did not err in her evaluation of the medical record regarding Claimant's back and leg pain.

c.  *Medical Evidence Related to Mental Impairments*

Claimant next argues that the ALJ improperly evaluated the medical evidence with respect to Claimant's mental impairments, taking issue with the fact that Claimant's depression and anxiety "were simply the result of marital problems." Pl.'s Mem. at 11. The court disagrees.

In her opinion, the ALJ noted that Dr. Sriraman's treatment notes "indicate that the [C]laimant's anxiety and depression result primarily from marital problems." (R. 13). This is supported by the record. Claimant initially presented to Dr. Sriraman after she was hospitalized in July 2008 post suicidal ideations and threats. (R. 199-215). Treatment notes from Claimant's initial visit to Dr. Sriraman states that "[Claimant] alleges that her 3rd husband, with whom she is living, has been drinking excessively until six months back. When he drinks, he emotionally and physically abuses her." (R. 398). Moreover, the treatment notes stated that Claimant had been married three times, and both husbands allegedly cheated on her and physically and emotionally abused her. *Id.* Notes from her psychotherapist indicated that once Claimant began having fewer conflicts with her husband and step-children, her depression lifted somewhat. (R. 365). The psychotherapist also noted that Claimant was continually frustrated by conflicts with her husband and step-children. (R. 366, 293). Therefore, the ALJ's statement that Claimant's anxiety and depression primarily resulted from marital problem was supported by the record.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the

23

respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted the 20th day of September, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge